2010 Ark. App. 191

**Merilee HENDERSON and Jeremiah Devon, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

**No. CA 09–1135.**

Court of Appeals of Arkansas.

Feb. 24, 2010.

Leah Beth Lanford, Suzanne Ritter Lumpkin, Little Rock, AR, for appellant.

Keith L. Chrestman, Jonesboro, AR, Tabitha Baertels McNulty, Little Rock, AR, for appellee.

DAVID M. GLOVER, Judge.

The Benton County Circuit Court terminated the parental rights of appellants Merilee Henderson and Jeremiah Devon in their son, S.D. (born December 28, 2006). Henderson seeks reversal, arguing that termination was not in S.D.'s best interest and that no grounds for termination existed. Devon's counsel has filed a no-merit brief and motion to withdraw pursuant to *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup.Ct. R. 6–9(i). Counsel lists the termination decision as the only adverse ruling below and states that there are no issues of arguable merit for appeal. Our clerk's office mailed a copy of the brief and motion to Devon's last known address, informing him of his right to submit points for reversal. Devon has filed no pro se points. For the reasons explained below, we affirm the termination order as to both appellants and grant Devon's counsel's motion to withdraw.

The case began when the Arkansas Department of Human Services ("DHS") sought emergency custody of S.D., based on the following events described in DHS's affidavit. On March 27, 2008, a sheriff's deputy investigated a domestic disturbance at appellants' home and found appellants "wrestling around" when he arrived. Appellant Henderson appeared to be under the influence of drugs, had a fresh blood blister on her arm consistent with drug use, and said she had injected Oxycontin the previous night. Henderson also admitted to a prior methamphetamine addiction, and Devon reported having a serious drinking problem. Authorities arrested appellants for domestic assault and charged Henderson with obstructing governmental operations. EMS personnel took S.D., who had been sick for several days, to the hospital, where medical personnel diagnosed him with inner-ear and upper-respiratory infections.

On March 31, 2008, the trial court granted emergency custody of S.D. to DHS. After finding probable cause for S.D.'s removal from the home, the court adjudicated the child dependent-neglected, noting appellants' stipulations that they suffered from drug or alcohol addictions and that they lacked stable and appropriate housing and employment. The court set a goal of reunification and adopted DHS's recommendations for appellants, including counseling, parenting classes, visitation with S.D., random drug testing, AA/NA meetings, appropriate housing and employment, and, in Henderson's case, a drug-and-alcohol assessment. The court later added requirements that appellants obtain psychological evaluations and complete inpatient drug treatment.

Through two ensuing review periods, the court continued the goal of reunification, despite appellants testing positive for drugs, being inconsistent in visiting S.D., missing counseling appointments, and not documenting their attendance at AA/NA meetings or parenting classes. On February 10, 2009, the court held a permanency-planning hearing that changed the goal of the case to termination of parental rights. The court found that appellants had been dismissed from intensive family services

for missing half of their appointments; that Henderson was incarcerated and had not completed a psychological evaluation or in-patient drug treatment; that Devon had not proved attendance at AA/NA meetings or parenting classes as ordered; and that Devon had missed or was late to his visits with S.D. The court held a termination hearing on May 29, 2009.

### Devon's no-merit appeal

■ At the termination hearing, Devon testified that he lived with his mother and stepfather and that he had been employed for one month. He said that he had been cited the previous week for owing several thousand dollars in child support and that he was arrested in February 2009 for leaving the scene of an accident. Devon said that he stopped attending sessions with one counselor because he did not like the counselor's "actions" and that he missed nine or ten visits in a row with another counselor due to medical problems or being too depressed to get out of bed. Devon acknowledged that he had not undergone sufficient counseling to address his issues. He additionally admitted to giving false answers on his psychological evaluation, stating that he lost interest and wanted to "go home and lay down." Devon further testified that he had not completed parenting classes and that he had lost interest in visiting S.D., having attended only three of the last fourteen scheduled visits.

Dr. Martin Faitak, who conducted Devon's psychological evaluation, testified that Devon's test scores were above average for anxiety, depression, psychotic experiences, suicidal ideation, aggressive attitude, thought disorder, and egocentricity. Dr. Faitak said that Devon reported previous arrests for alcohol-related and domestic-violence offenses and that Devon stated that he was violent only when he was inebriated.

Family service worker Stephanie Cochran testified that a home study on Devon's mother's residence was not approved. She also said that Devon had missed numerous visits with S.D., missed several counseling sessions, and had not actually worked as a ranch hand in recent months, as he claimed. Paige Stephens of the Ozark Guidance Center testified that Devon had not seen a therapist since February 10, 2009, and that he had missed or canceled several appointments since that date. Documentary evidence reflected that Devon tested positive for marijuana on July 25, 2008, and on August 1, 2008, during a visit with S.D. DHS also produced evidence that S.D.'s foster parent wanted to adopt him.

After a careful review of the record, counsel's brief, and the above evidence, we find that counsel has complied with the Arkansas Supreme Court's requirements for no-merit appeals in termination cases, and we conclude that Devon's appeal is wholly without merit. *See Staley v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 694, 2009 WL 4654776. We therefore affirm the termination order as to Devon and grant counsel's motion to withdraw.

### Henderson's merit appeal

Henderson testified at the termination hearing that she was arrested for possession of a controlled substance and possession of drug paraphernalia approximately sixty days after S.D. was taken into custody by DHS. As a result, she was incarcerated in a residential treatment facility beginning in November 2008. Henderson stated that she received a two-year sentence but that, if she completed her long-term drug-treatment program, she could be released in August 2009. She testified further that she was currently working on

the fourth step of an AA program and that she had been appointed to a position of responsibility at the treatment facility four weeks earlier. She provided documentation that, in the few months prior to the termination hearing, she completed parenting classes, money-management training, and various workforce-preparation seminars. According to Henderson, she had housing and a job available upon her release, although she would "have to go apply" for the job. She acknowledged that neither she nor Devon had been employed when S.D. was taken into DHS custody. Henderson also stated that she wanted to attend community college and ₆that she had completed her financial aid application. Henderson testified further that she had married Devon the previous November and that she corresponded with him frequently; however, she said that she intended to keep Devon away from her if he was not drug free and stated that she would require him to have a steady job, to help around the house, and to attend AA/NA meetings and church.

Henderson acknowledged having previous drug problems and said that she attended in-patient treatment in October 2008 for two weeks, just prior to her incarceration. She testified that she missed some counseling appointments prior to her incarceration but said that her counselor told her that she did not need counseling any longer. Henderson also said that she did not undergo a psychological evaluation because her caseworker did not set up the appointment. She stated that she did not recall receiving a telephone call from Dr. Faitak's office on October 13, 2008.

Foster parent Delia Ingle said that S.D. had been in her care for one year. She said that the child was very sick when he first came to her, that he had trouble sleeping through the night without screaming, and that he did not like to be held. Ingle stated that those problems had been rectified and that she and her husband wanted to adopt S.D.

Family service worker Stephanie Cochran testified that S.D. could not safely be returned to Henderson in August 2009, even if Henderson were released at that time. Cochran said that Henderson would have to demonstrate that she could stay clean, maintain ₇stable housing and employment, attend visitations, and perform parenting skills. Cochran also testified that DHS had provided numerous services to Henderson and Devon, including visitation, counseling referrals, drug-and-alcohol assessments, transportation assistance, and referrals for housing and employment. Cochran stated further that S.D. had been in a foster home since May 2008 and that he was "a completely different child" than he had been earlier in the case.

DHS also entered several exhibits into evidence without objection by Henderson. Drug-testing affidavits showed that, in mid–2008 after S.D. was placed in DHS custody, Henderson tested positive for marijuana and cocaine while taking prescriptions for Xanax and hydrocodone. A DHS court report reflected that Henderson also tested positive for marijuana during an August 1, 2008 visit with S.D. Other reports stated that a counselor discontinued services with Henderson and Devon because they missed half of their scheduled appointments and that both parents missed visits with S.D. in August, September, and October 2008. DHS also entered a judgment and commitment order showing Henderson's 2004 conviction for delivery of a controlled substance. The order reflected that Henderson was sentenced to two years in a regional punishment facility, that she was scheduled to complete long-term drug treatment while there, that she had a prior record of simi-

lar offenses, and that she had a persistent problem with probation violations.

Following the hearing, the circuit court terminated Henderson's and Devon's parental rights in S.D. The court found that termination was in the child's best interest and that the following grounds were proved by clear and convincing evidence: 1) that the child had been adjudicated dependent-neglected and continued out of the home for twelve months and that, despite a meaningful effort by DHS to rehabilitate the home and correct the conditions that caused removal, those conditions were not remedied; 2) that, subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose that demonstrated that return of the child to the parents' custody was contrary to the child's health, safety, or welfare, and that, despite the offer of appropriate family services, the parents had manifested the incapacity or indifference to remedy the subsequent issues or factors, or rehabilitate their circumstances, which prevented return of the child to them. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(a) and (vii)(a) (Repl.2009). Henderson appeals from the termination order.

An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest and that at least one statutory ground for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(A) and (B) (Repl.2009). This court will not reverse the circuit court's findings in a termination case unless they are clearly erroneous. *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire

evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We review termination orders de novo. *Id.*

Henderson argues first that DHS produced insufficient evidence of potential harm in returning the child to her. Potential harm is a factor that the circuit court must consider in assessing the child's best interest. *See* Ark.Code Ann. § 9–27–341(b)(3)(A)(ii).[1] The court is not required to find that actual harm would ensue if the child were returned to the parent, nor to affirmatively identify a potential harm. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. Rather, the potential-harm analysis is to be conducted in broad terms. *Thomsen v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 687, 370 S.W.3d 842.

In this case, we cannot say that the circuit court clearly erred in its consideration of the potential-harm factor or in finding that termination was in S.D.'s best interest. Although Henderson made efforts to rehabilitate herself after her November 2008 incarceration, her eleventh-hour improvements need not be credited by the circuit court and will not be held to outweigh evidence of prior noncompliance. *See Krass v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 245, 306 S.W.3d 14. By the time Henderson began any semblance of serious effort in this case, S.D. had been in DHS custody for eight months or more. During those eight months, Henderson tested positive for drugs several times and was arrested and convicted on drug-related charges. She also failed to obtain a psychological evaluation as ordered by the court and was inconsistent in visiting S.D. Moreover, her stated desire to achieve

---

[1]. The court must also consider the likelihood that the child will be adopted. Ark.Code Ann. § 9–27–341(b)(3)(A)(i). Henderson does not challenge the circuit court's consideration of this factor.

the goals of employment and education, while admirable, does not warrant reversal. Her abilities in these areas remain untested, as she has yet to demonstrate that she can provide for S.D. in a normal environment outside of prison. Furthermore, Henderson's drug rehabilitation was still a work in progress at the time of the hearing. This factor is particularly relevant to the potential-harm analysis, given Henderson's history of serious drug addiction, her usage of drugs during the case, her prior drug charges, and her tendency to violate probation after being convicted on drug charges. Past actions of a parent over a meaningful period of time are good indicators of what the future may hold. *Thompson v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 167, 374 S.W.3d 143.

Henderson points out that she hoped to be released in August 2009, which would allow her to regain custody of S.D. However, her early release was not a certainty. *See Fields v. Ark. Dep't of Human Servs.,* 104 Ark. App. 37, 289 S.W.3d 134 (2008). Her sentence runs through November 2010, and by that time, S.D. will have been out of her custody for well over two years. Furthermore, even if Henderson were released early, DHS would require additional time for her to demonstrate the ability to maintain suitable housing and employment and live a law-abiding, drug-free life without the restrictions imposed by incarceration. *See id.* The prolonged period that would be required for Henderson to prove herself would stretch S.D.'s time without permanency beyond that contemplated by our termination statute. Arkansas Code Annotated section 9–27–341(a)(3) (Repl. 2009), provides that the intent of our termination statute is to provide permanency in a child's life in all instances in which the return of the child to the family home is contrary to the child's health, safety, or welfare and it appears from the evidence that a return to the family home

cannot be accomplished in a reasonable period of time as viewed from the child's perspective. We have also recognized that a child's need for permanency and stability may override a parent's request for additional time to improve her circumstances. *Dozier v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 17, 372 S.W.3d 849. In these circumstances, including the presence of a readily available adoptive family for this young child, we affirm the court's ruling that termination was in S.D.'s best interest.

Henderson argues next that DHS failed to prove grounds for termination. The circuit court did not err on this point. Arkansas Code Annotated section 9–27–341(b)(3)(B)(vii)(a) sets out the following statutory ground:

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevents return of the juvenile to the custody of the parent.

Subsequent factors bearing on Henderson's parental fitness arose after the filing of the original dependency-neglect petition in this case. These included Henderson's drug use during the case; her commission of drug-related crimes after S.D. was taken into DHS custody; her failure to follow court orders during much of the case; and her failure to have appropriate housing or employment more than one year into the case. The circuit court may well have found that, despite DHS's offer of appropriate ser-

vices, these factors demonstrated that returning S.D. to Henderson was contrary to the child's health, safety, or welfare, and that, given Henderson's drug use and failure or inability to follow court orders, she manifested an incapacity or indifference to remedy those subsequent issues or factors or rehabilitate her circumstances. Accordingly, the elements of the statutory ground for termination contained in Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(a) were met. The presence of these elements also contradicts Henderson's claim that the circuit court terminated her parental rights based solely on her incarceration.

We therefore affirm the termination order as to Henderson.

Affirmed; motion of Devon's counsel to withdraw granted.

ROBBINS and MARSHALL, JJ., agree.