2010 Ark. App. 856

**Harley HOFFMAN, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES & MINOR CHILD, Appellees.**

**No. CA 10–826.**

Court of Appeals of Arkansas.

Dec. 15, 2010.

Deborah Ruth Sallings, Little Rock, for appellant.

Melissa Bristow Richardson, Bristow & Richardson P.L.L.C., Jonesboro, Tabitha Baertels McNulty, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

Harley Hoffman appeals from a circuit-court order terminating his parental rights in K.H. (born November 28, 2007). Hoffman does not challenge the court's finding that termination was in K.H.'s best interest. Instead, he argues that the court erred in refusing to grant him additional time to achieve reunification with K.H. We affirm the termination order.

On February 4, 2009, the Springdale police arrested Hoffman and K.H.'s mother, Tiffany Snodgrass, on numerous charges including possessing methamphetamine, endangering the welfare of a minor, and violating parole. The Arkansas Department of Human Services (DHS) sought emergency custody of K.H. based on a caseworker's sworn statement that both parents tested positive for a variety of controlled substances; that Hoffman admitted to using drugs at least twice a week, including intravenous injections of methamphetamine; and that Ms. Snodgrass admitted to the couple's using drugs while K.H. was in the home. The circuit court granted emergency custody to DHS on February 9, 2009.

In the ensuing weeks, the court found probable cause for K.H.'s removal from the home and adjudicated the child dependent-neglected due to parental neglect and unfitness. The court noted that Hoffman was incarcerated and required him to obtain stable housing and employment; to refrain from using alcohol and illegal drugs; to complete parenting classes; and to meet other goals designed to achieve reunification. A review order entered on October 1, 2009, directed Hoffman to complete all available programs while in prison; to attend AA/NA meetings three times a week; to call the DHS caseworker once a week; and to undergo weekly drug screens upon his release from prison.

In a January 2010 permanency-planning order, the court changed the goal of the case to termination of parental rights based on both parents' minimal progress and continued incarceration. Hoffman remained in prison until April 9, 2010, approximately three weeks before the termination hearing. By that point, K.H. had been in DHS custody for fourteen months.

At the termination hearing, Hoffman testified that he had not yet acquired a vehicle or a home of his own but was living with a friend who helped him with transportation. He said that he planned to get a car and stable housing and that he had obtained a job a few days before the hearing. He also testified that he had begun counseling and drug-treatment classes through his parole officer, though he had not attended any AA/NA meetings. During his imprisonment, Hoffman said, he took parenting classes, substance-abuse classes, and anger-management classes. He testified that he was through with his "drug life" and hoped to be stable enough to regain custody of K.H. within two months.

On cross-examination, Hoffman acknowledged that he had not contacted DHS or undergone weekly drug screens upon his release as ordered by the court. He also said that he had not provided DHS with documentation of the classes he took while in prison, but he stated that verification could be requested by the court. Hoffman testified further that he was subject to a twenty-seven-year suspended sentence following his release from prison and that he had served jail time on previous drug charges during the first nine months of K.H.'s life. Hoffman agreed that it was possible he had only spent four months with K.H., due to his imprisonment.

Tiffany Snodgrass, K.H.'s mother, testified that it would not be in K.H.'s best interest to be placed with either her or Hoffman. She said that Hoffman had been to prison before and that, within two weeks after his release, he began using drugs again. She said that she did not believe Hoffman would change.

DHS family service worker Angela Wood testified that K.H. was doing well in DHS custody and was showing quite a bit of progress developmentally. She said that the child had been in a pre-adoptive foster home for about a year and that the family would like to adopt him. Wood also said that Hoffman did not inform her of his release from prison and that, if he had contacted her, she would have made sure that he was in a support group and had various other forms of assistance.

At the close of the evidence, the court ruled from the bench that it would terminate Hoffman's and Snodgrass's parental rights. The court recalled that K.H. had been taken into custody based on the parents' drug use and the "disgusting, dirty, [and] horrific" state of their home. Since that time, the court said, both parents had been incarcerated. With regard to Hoffman, the court found that he "talks a mean game" about getting his life together but that he had not called DHS or submitted to drug screens when he was released from prison. The court further noted that it would take much longer than two months for Hoffman to prove that he was stable, sober, and capable of taking care of K.H. And, the court expressed concern over the uncertainty posed by Hoffman's twenty-seven-year suspended sentence in light of his inability to demonstrate a lengthy period of sobriety. The court's termination order, entered on May 17, 2010, found that termination of parental rights was in K.H.'s best interest; that DHS had an appropriate permanent-placement plan of adoption; and that at least one statutory ground for termination existed, pursuant to Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a*) (Repl.2009). Hoffman filed a timely notice of appeal.[1]

■ An order terminating parental rights must be based on a finding by clear and convincing evidence that 1) termination is in the child's best interest, considering the likelihood that the child will be adopted and the potential harm in returning the child to the parent, and 2) at least one statutory ground for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(A) and (B) (Repl.2009). We review termination-of-parental-rights cases de novo. *Smith v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 747, 379 S.W.3d 663. We will not reverse the trial court's findings of fact unless the findings are clearly erroneous. *Id.* In our review, we give due regard to the opportunity of the trial judge to assess the credibility of the witnesses, and we give great weight to the trial judge's personal observations. *Id.*

1. The mother consented to termination and does not appeal the termination order.

Hoffman argues on appeal that the circuit court should have granted him additional time before terminating his parental rights. He concedes that the court could not have returned K.H. to him on the date of the termination hearing, but he points to the classes he took while in prison and his efforts to obtain housing, employment, and stability since his release as evidence of his commitment to improving his circumstances. We conclude that, despite Hoffman's laudable efforts, the circuit court did not clearly err in denying his request for additional time.

The intent of our termination statute is to provide permanency in a child's life in all instances in which returning the child to the family home is contrary to the child's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *See* Ark.Code Ann. § 9–27–341(a)(3) (Repl.2009). Our court has frequently recognized that a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *See Johnson v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 763, 2010 WL 4523759; *Henderson v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 191, 377 S.W.3d 362; *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849. That is the case here. DHS obtained emergency custody of K.H. on February 9, 2009, when the child was approximately fourteen months old. Hoffman's incarceration on drug charges extended from that date until April 28, 2010, when K.H. was approximately twenty-nine months old. By his own admission, Hoffman was not prepared to be K.H.'s parent at the time of the termination hearing. While he hoped to be stable enough to regain custody of K.H. within two months, the circuit court

found that it would take much longer than that for Hoffman to achieve fitness as a parent. Furthermore, Hoffman did not demonstrate stability or sobriety for any appreciable length of time outside the confines of prison. Under these circumstances, the circuit court did not clearly err in finding that the time required for Hoffman to achieve parental fitness would push the case beyond the limits contemplated by section 9–27–341(a)(3). *See Henderson, supra.*

The court also correctly considered Hoffman's past actions in determining whether he was likely to improve his circumstances. A parent's past behavior over a meaningful period of time is a good indicator of what the future may hold. *See Johnson, supra; Thompson v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 167, 374 S.W.3d 143. In this case, Hoffman was not only incarcerated for using drugs while K.H. was in the home but also served a prior term of imprisonment on drug charges that spanned the first nine months of K.H.'s life. He thus had lived with K.H. only a few months during the child's lifetime and seemingly spent much of that time taking drugs. Additionally, Hoffman underwent drug treatment during his previous incarceration but apparently did not profit by it. According to Tiffany Snodgrass, Hoffman began using drugs again within two weeks after his release. His usage culminated in his arrest and conviction on new charges and his losing custody of K.H.

Hoffman cites *Benedict v. Arkansas Department of Human Services*, 96 Ark. App. 395, 242 S.W.3d 305 (2006), where we reversed a termination order based on a parent's attempts to achieve stability, but that case is inapposite. In *Benedict*, the children were removed from their mother after she experienced a psychotic episode. By the time of the termination hearing, the

mother had completed parenting classes, obtained treatment and counseling, acquired a job where she was considered a good employee, and acquired stable housing. Her progress was so measurable that DHS and a clinical psychologist recommended that the children be returned to her, at least on a trial basis. By contrast, Hoffman showed no such progress, and his potential for stability remained doubtful. By everyone's account—including his own—Hoffman still lacked the ability fourteen months into the case to provide for K.H.

Hoffman argues further that, because the circuit court did not grant him additional time to improve his circumstances, the statutory ground for termination found at Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)(*a*) was not proved. That ground provides for termination of parental rights where the juvenile has been adjudicated dependent-neglected and has continued out of the parent's custody for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Hoffman contends that he needed additional time to remedy the conditions that caused removal because his incarceration rendered him unable to take advantage of DHS services. *See Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997) (holding that a parent's incarceration is not conclusive on the termination issue).

In *Friend v. Arkansas Department of Human Services*, 2009 Ark. App. 606, 344 S.W.3d 670, a parent similarly claimed that he could not follow court orders and the case plan due to his imprisonment. We affirmed the termination decision, observing that the father's inability to fully participate in the case plan, "did not mean that he bore no responsibility for having

created his situation." *Id.*, 344 S.W.3d at 677. We also held in *Friend* that the circuit court was required to view the entire picture of how the parent discharged his duties, recognizing that the parent's incarceration made it unlikely that he could obtain stable housing or accomplish other necessary goals within a time frame consistent with the child's developmental needs. Likewise, in the present case, Hoffman created the situation that placed him in prison, and, at the time of the termination hearing, it remained uncertain whether he could achieve the necessary reunification goals in time to meet K.H.'s needs.

We also observe that Hoffman's attempts to comply with the case plan and court orders is not determinative on the termination issue. What matters is whether his efforts achieved the intended result of making him capable of caring for his child. *See Wright v. Ark. Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003). Given Hoffman's disturbing history of drug abuse; his failure to learn from his previous drug conviction and incarceration; his disregard of certain court orders upon his release from prison; his inability to demonstrate proper parenting skills during the few short months he had physical custody of K.H.; the uncertainty of whether he could achieve stability within a reasonable time frame; and the fact that K.H.'s mother did not consider him to be a good prospect for change, we cannot say that the court clearly erred in denying Hoffman's request for additional time or in finding that grounds for termination existed.

Affirmed.

VAUGHT, C.J., and HART, J., agree.