
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-354

| | |
|---|---|
| | **Opinion Delivered** October 2, 2013 |
| TASSIE ANTHONY | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, |
| APPELLANT | WESTERN DISTRICT [NO. JV-2012-61] |
| V. | |
| | HONORABLE BARBARA HALSEY, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN | |
| APPELLEES | AFFIRMED |

## RHONDA K. WOOD, Judge

The circuit court terminated Tassie Anthony's parental rights to her two children. She appeals and argues that the Department of Human Services (DHS) failed to prove a statutory ground for termination. We disagree and affirm.

### I. *Facts*

T.W.1 was born weighing 4 lbs. and 11 oz. on February 13, 2012. She spent nine days in the hospital on oxygen and IV antibiotics. Due to her medical condition, the hospital required her mother, Tassie Anthony, to take a CPR course before releasing the child to her. Anthony refused to take the class and also tested positive for drugs, so DHS took a hold on T.W.1 on February 27, 2012. Anthony again tested positive for drugs at the probable-cause hearing, and the court found probable cause as to T.W.1 and placed a

72-hour hold on Anthony's other child, T.W.2.[1] Both children were adjudicated dependent-neglected in April 2012. The court found that Anthony had abandoned T.W.1 and was unfit to parent because of drug use. Notably, neither Anthony nor T.W.2 was present at the adjudication hearing.

DHS filed a petition to terminate Anthony's parental rights to both children in June 2012. It alleged that Anthony had abandoned T.W.1 and absconded with T.W.2, whom DHS had still been unable to locate and bring into custody. Anthony had yet to appear since the first probable-cause hearing or have any significant contact with DHS. Anthony eventually relinquished T.W.2 to DHS's custody in August 2012. A termination hearing began then, but the case was continued, and the court terminated Anthony's parental rights to both children after a January 2013 hearing.

Testimony at the hearing showed that since Anthony had reappeared in August, she had exercised visitation with her children inconsistently, missing at least five scheduled visits. Further, Anthony had been arrested three times; had not had a job since October 2012; and was currently living with her mother. Both Anthony and her mother had recently been arrested for drug possession.

Terri Blanchard, foster-care supervisor, testified that DHS had provided Anthony with parenting classes, but that referrals to psychological and drug assessments were discussed but never made. According to Blanchard, those services were delayed because Anthony failed to provide contact information and had been in and out of jail. Anthony

---

[1] A probable-cause hearing was subsequently held as to T.W.2, and the mother failed to appear.

admitted that she had absconded with T.W.2, failed to comply with court orders, and had

spent over a month in jail. She also admitted to having a drug problem, but had just

started (in January 2013) rehab.

The juvenile court terminated Anthony's rights to both of her children, finding by

clear and convincing evidence that termination was in the children's best interest. Further,

the court found that the following statutory grounds had been proved by clear and

convincing evidence:

- That Anthony had abandoned T.W.1,[2] and

- That other factors or issues arose subsequent to the filing of the original
  petition for dependency-neglect that demonstrate that return of the juvenile
  to the custody of the parent is contrary to the juvenile's health, safety, or
  welfare and that, despite the offer of appropriate family services, the parent
  has manifested the incapacity or indifference to remedy the subsequent issues
  or factors or rehabilitate the parent's circumstances that prevent return of the
  juvenile to the custody of the parent.[3]

Anthony appeals the termination order, arguing that the court's finding on the statutory

grounds was clearly erroneous. We disagree.

II.  *Standard of Review and Applicable Law*

This court reviews termination–of–parental–rights cases de novo. *Dinkins v. Ark.*

*Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Grounds for termination of

parental rights must be proved by clear and convincing evidence. *M.T. v. Ark. Dep't of*

*Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). When the burden of proving a

disputed fact is by "clear and convincing evidence," the question on appeal is whether the

---

[2] Ark. Code Ann. § 9–27–341(b)(3)(B)(iv) (Supp. 2011).
[3] Ark. Code Ann. § 9–27–341(b)(3)(B)(vii) (Supp. 2011).

circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well being of the child. *M.T.*, *supra.*

The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *L.W. v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 44, 380 S.W.3d 489. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2011). The second step requires consideration of whether the termination of parental rights is in the juvenile's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2011). Anthony does not challenge the court's best-interest finding, so we only address whether a statutory ground for termination exists by clear and convincing evidence. *See Hoffman v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 856, 380 S.W.3d 454.

### III. *Discussion*

The circuit court's finding that DHS proved the "other factors" ground by clear and convincing evidence was not clearly erroneous. Because only one ground is needed to terminate, we do not address abandonment, the other alleged statutory ground. *See Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007).

First, Anthony concealed T.W.2 from DHS and law enforcement following the first probable-cause hearing in March 2012 and did not turn him over to DHS until

August 2012. Second, the evidence showed that returning the children to Anthony is contrary to their health, safety, and welfare. Anthony did not have a job or a stable residence. When the hearing took place, she lived with her mother, and both of them were drug users and recent arrestees. A court could not return the children to Anthony's custody under these circumstances because she could not provide for their basic needs, used drugs, and had demonstrated an inability to stay out of jail.

Third, Anthony had made only marginal attempts at improving her situation since she reinstituted contact with DHS in August 2012. Since that time, she had been to jail multiple times and had exercised sporadic visitation. She admitted to still having a drug problem but had not made significant progress at rehabilitation. This is important because the children came into custody in the first place because Anthony had tested positive for drugs. Yet, almost a year later, Anthony had just begun rehabilitation. Further, Anthony did not take advantage of any of the services DHS offered because she was either absent, in jail, or had failed to provide her address. In fact, the only services Anthony took advantage of were parenting classes, watching "The Clock is Ticking" video, and attending staffings. Anthony argues that she "immersed herself in the case after the August . . . hearing." But she admitted that she was in jail from November 14 to December 14 and that she had missed multiple visitations. Essentially, Anthony only communicated with DHS one-half of the time the case was open and was in jail one-fourth of that time. There is no merit to Anthony's contention that she made significant efforts to remedy her situation.

Finally, Anthony has raised the issue that the petition to terminate was stale and that she lacked notice of the issues she had to defend against at the termination hearing. While it's true that DHS filed the petition to terminate in June 2012 and most of the issues discussed above occurred after August 2012, Anthony never objected at the hearing that she lacked notice of the charges against her. "Permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue." *Hope v. Hope*, 333 Ark. 324, 330, 969 S.W.2d 633, 636 (1998). Additionally, failure to raise an issue below precludes appellate review. *Lamontagne v. Ark. Dep't of Human Servs.*, 2010 Ark. 190, 366 S.W.3d 351.

Affirmed.

GRUBER and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, DHS—Office of Policy and Legal Services, and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.