Michael ALBRIGHT *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 06-270                                                248 S.W.3d 498

Court of Appeals of Arkansas
Opinion delivered January 31, 2007

278

*Glen Hoggard*, for appellant.

Office of Chief Counsel, Arkansas Dep't of Health and Human Servs., by: *Gray Allen Turner*.

WENDELL L. GRIFFEN, Judge. On November 18, 2005, the Faulkner County Circuit Court filed an order terminating Michael Albright's parental rights to his three children, H.A. (born December 6, 2001), B.A. (born October 5, 2002), and D.A. (born September 19, 2004), based upon a finding that he sexually

abused H.A. and his girlfriend's daughter, S.M. Appellant appeals from the termination order, arguing that the circuit court erred in entering the order based upon a finding unrelated to the original adjudication order. He also challenges the sufficiency of the evidence supporting the finding that he sexually abused S.M. We find none of appellant's arguments persuasive; therefore, we affirm.

On June 20, 2005, the circuit court entered an order adjudicating H.A., B.A., D.A., and S.M. dependent-neglected, based upon findings of educational neglect for S.M. and of medical neglect for the other three children. On July 22, 2005, the Arkansas Department of Human Services (DHS) filed a petition to terminate appellant's parental rights to H.A., B.A., and D.A., alleging sexual abuse. The termination hearing was held November 15, 2005.

Appellant testified that he wanted his children returned to him because he was their biological father. He stated that he was involved in feeding, bathing, and clothing the children when he lived with Beverly McKee, the children's mother.[1] He stated that he did not want to bathe the girls (S.M. and H.A.) after they turned two because he did not want to be accused of sexually abusing them. Appellant testified that S.M. had rashes in her vaginal area due to diaper rash and that he and McKee would apply ointment. He stated that he stopped applying S.M.'s ointment once she was potty-trained, again to avoid being accused of abusing the children. He recalled telling Detective Melissa Smith of the Conway Police Department that he had never bathed S.M. or applied any medicine to her breasts, buttocks, or vaginal area. Appellant also recalled an interview with Sergeant Jim Barrett, where he told Barrett that he might have inadvertently touched S.M.'s privates while drying her off after a bath. Appellant testified that he was the primary disciplinarian when he lived with McKee and that, on severe infractions, he would spank the children on their bare bottoms. He stated that he did not believe that he would be accused of molesting the children by spanking them.

Sergeant Barrett corroborated much of appellant's testimony regarding their interview. Barrett testified that he interviewed appellant on June 1, 2005, and that appellant was at the police

---

[1] Beverly McKee voluntarily relinquished her parental rights to the three children. Her involvement in this case is mentioned only to the extent that it is relevant to appellant's case.

station to take a voice-stress test. He stated that, when initially discussing the allegations, appellant "stated categorically and un-equivocally" that he never touched S.M.'s breast or vaginal area. However, as the pretest interview continued, appellant changed his story and stated that he might have inadvertently touched S.M. in those areas when he was drying her off. At that point, Sergeant Barrett decided that the voice-stress test was unnecessary.

With only the judge, the ad litem, and the court reporter present, S.M., then six years old, testified that she was afraid of appellant because he touched her "in the wrong spots," referring to her chest and genital area. She stated that appellant was not taking care of her when he touched her. S.M. testified that appellant once told her, "You'd better not tell your mom or I'll call the cops on your mom." She also stated that appellant choked her on one occasion.

Maria Hill testified that S.M. lived with her for a brief period of time. While Hill testified about how she came to have tempo-rary guardianship of S.M., that testimony is not relevant to the issues in this appeal. However, Hill testified that one night while S.M. was saying her prayers, she overheard S.M. say that she wanted to hurt appellant. She also stated that S.M. had acted out sexually one night. According to her testimony, S.M. was spend-ing the night at a teacher's house. The teacher had a daughter, and S.M. and her daughter slept in the same bed. The teacher saw S.M. trying to take the other girl's clothes off. Hill noted a third incident, where S.M. was playing with two dolls. As S.M. was playing with the dolls, Hill heard her say, "Take your clothes off. I want to get on top of you."

Detective Smith testified that she interviewed appellant on March 31, 2005, regarding the allegations. She stated that appellant denied touching S.M.'s breasts, buttocks, or vaginal area. He also denied applying medication to those areas or bathing her. Smith said that appellant explained that he avoided "a thing like that to keep himself from situations like this." She stated that she also interviewed S.M., who told Smith that appellant abused her. Smith concluded that appellant touched S.M. intentionally and inappropriately.

Smith also testified about her interviews with McKee. During her first interview, McKee told Smith that "she had to throw a fit in order to get [appellant] to help her with anything," although appellant was willing to bathe the children. Smith stated

that during a second interview, McKee claimed to remember things that she did not remember before. McKee told Smith about an incident where she heard S.M. crying. McKee stated that she went into the room where S.M. was, and S.M. was on the bed nude from the waist down. Appellant told McKee that he was disciplining S.M. The court also received a copy of the report to the prosecuting attorney, outlining statements made by S.M., H.A., appellant, and McKee.[2]

On November 18, 2005, the circuit court filed an order terminating appellant's parental rights. The court found by clear and convincing evidence that appellant sexually abused S.M. and H.A. and that it would be harmful for the children to have any further contact with him. It also specifically found S.M.'s testimony to be credible and appellant's testimony to be not credible.

*Standard of Review*

An order terminating parental rights must be based upon a finding by clear and convincing evidence that termination of a parent's rights is in the best interest of the children, considering the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm caused by returning the children to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2005). The court must also find that termination is warranted pursuant to one of the grounds outlined in section 9-27-341(b)(3)(B). Here, DHS alleged the following three grounds:

> (vi)(a) The court has found the juvenile dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents.
>
> . . . .
>
> (vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity

---

[2] We do not recount the specific remarks made by S.M, but suffice it to say that S.M. gave statements regarding the sexual abuse perpetrated by appellant.

or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

. . . .

(ix)(*a*)  The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to: . . .

(*3*)(*A*)  Have subjected any juvenile to aggravated circumstances.

(*B*)  "Aggravated circumstances" means:

(*i*)  . . . a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Benedict v. Arkansas Dep't of Human Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006). However, courts are not to enforce parental rights to the detriment or destruction of the health and well-being of a child. *Id.* A heavy burden is placed upon a party seeking to terminate the parental relationship, and the facts warranting termination must be proven by clear and convincing evidence. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction regarding the allegation sought to be established. *Id.* This court does not reverse the circuit court's finding of clear and convincing evidence unless that finding is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

### Analysis

Appellant argues that the circuit court erred by not following the dictates of the juvenile code regarding the termination of a parent's rights. He first contends that the circuit court erroneously allowed an adjudication against the mother for educational and medical neglect to suffice as an adjudication against him for charges of sexual abuse. Nothing in the Arkansas juvenile code supports appellant's argument. The code does not refer to "dependent-neglected parents," but "dependent-neglected juveniles." *See* Ark. Code Ann. §§ 9-27-303(18) (Supp. 2005) (defining

"dependent-neglected *juvenile*"); 9-27-327(d) (Supp. 2005) (noting that a court may order studies, evaluations, or predisposition reports following an adjudication in which a *juvenile* is found to be "dependent-neglected"); 9-27-334 (Supp. 2005) (noting the possible dispositions a circuit court may order upon a finding that a *juvenile* is dependent-neglected).

An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. Any objections to the adjudication must be raised at the adjudication hearing. Once a juvenile is adjudicated dependent-neglected, a second adjudication is unnecessary, even if one or both parents failed to appear at the adjudication hearing. Here, appellant did not appear at the adjudication hearing despite the opportunity to do so. Furthermore, the details that produced the allegations of sexual abuse were not discovered until after the adjudication hearing.

We also note that if we were to interpret the juvenile code as appellant urges, several subsections of Ark. Code Ann. § 9-27-341 would be rendered meaningless, as most of the grounds for terminating parental rights listed in subsection (b)(3)(B) could have nothing to do with the reason that the children were adjudicated dependent-neglected. Most notable is subsection (b)(3)(B)(vii), which explicitly allows a termination to be based upon findings that have nothing to do with the original adjudication of dependency-neglect.

Appellant further contends that when a termination is based upon sexual abuse, the juvenile code requires that the abused juvenile be adjudicated dependent-neglected as a result of that sexual abuse. He argues that subsection (b)(3)(B)(vi) of the termination statute provides as one of the grounds for termination of a parent's rights, "The court has found the juvenile dependent-neglected as a result of . . . sexual abuse . . . , any of which was perpetrated by the juvenile's parent or parents."

Appellant focuses on merely one ground for terminating parental rights. DHS alleged three separate grounds for terminating appellant's parental rights. The circuit court's order, however, simply states that appellant sexually abused S.M. and H.A., that it would be harmful for the children to have any further contact with appellant, and that the children were adoptable. The circuit court's order does not specify which grounds DHS satisfied

under subsection (b)(3)(B), and appellant failed to request a specific finding. This court reviews termination proceedings de novo, *Yarbrough v. Arkansas Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006), and in our de novo review, we have no difficulty holding that DHS established that appellant subjected his children to aggravated circumstances based upon the circuit court's finding that appellant sexually abused S.M. and H.A. "Aggravated circumstances," by definition, includes subjecting a juvenile to sexual abuse. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*B*). As only one ground is necessary to terminate parental rights, *see Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001) (holding that the lower court's error in finding that the appellant willfully failed to provide support was harmless based on alternate grounds to support the termination of parental rights), we need not address appellant's arguments regarding either of the other sections.

Appellant also argues that the circuit court erred by finding that DHS presented clear and convincing evidence to prove the allegations of sexual abuse. He contends that S.M.'s testimony leaves the impression that she was "desperately attempting to please the adults with whom she is conversing." He identifies a number of inconsistencies in S.M.'s testimony and statements to interviewers. Appellant also contends that McKee's statements were "inconsistent, implausible, and controverted by the witness herself."

While appellant devoted fourteen pages of his argument to attack S.M.'s and McKee's credibility, his argument can be addressed succinctly. Our standard of review requires deference to the circuit court's determination's of credibility. *Benedict, supra.* To find any merit in appellant's contentions, this court would have to "act as a 'super factfinder,' substituting its own judgment or second guessing the credibility determinations of the court." *Id.* at 397, 242 S.W.3d at 308; *see also Moore v. Arkansas Dep't of Human Servs.*, 95 Ark. App. 138, 234 S.W.3d 883 (2006). We are bound by the circuit court's explicit finding that S.M.'s statements were credible; accordingly, we hold that S.M.'s statements, along with the other testimony at the hearing, were sufficient to establish that appellant perpetrated sexual abuse.

Affirmed.

PITTMAN, C.J., and VAUGHT, J., agree.