2010 Ark. App. 17

**Ray Melvin DOZIER, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee.

**No. CA 09–790.**

Court of Appeals of Arkansas.

Jan. 6, 2010.

Shannon Holloway Underwood, Little Rock, Arkansas Public Defender Comm'n, for appellant.

Tabitha Baertels McNulty, Office of Chief Counsel, for appellee.

Chrestman Group, PLLC, Jonesboro, by: Keith L. Chrestman, attorney ad litem for minor child.

KAREN R. BAKER, Judge.

Appellant, Ray Dozier, appeals from an order terminating his parental rights to his daughter, R.D., born October 6, 1999.[1] On appeal, appellant asserts that the evidence was insufficient to support the trial court's termination of his parental rights to R.D. We affirm the termination order.

On September 14, 2007, the Department of Human Services (Department) placed a seventy-two-hour hold on R.F. and R.D., children of Rita Adams–Fairrow, due to allegations of domestic violence occurring in the home and Ms. Adams–Fairrow's inability to protect herself or her two younger children. After a hearing on the Department's petition for ex-parte[2] emergency custody and dependency-neglect, the court found that immediate removal of the juveniles from the present custodian was necessary to protect the health and safety of the juveniles from immediate danger and entered an order for emergency custody on September 17, 2007. On September 20, 2007, a probable-cause hearing was held. There, the court found that probable cause existed that the emergency conditions that necessitated removal of the juveniles from the custody of the mother continued so that it was necessary that the juveniles continue in the custody of the Department and that it was contrary to the welfare of the children to be returned home.

On November 6, 2007, the children were adjudicated dependent-neglected. The adjudication was based on the mother's testimony at the adjudication hearing that she used cocaine, her positive drug screen in September, and her positive drug screen at the adjudication hearing. The adjudication was also based on the history of conflict and domestic violence in the home, environmental neglect, and the mother's significant health problems, including mental-health issues, kidney failure, hepatitis, and congestive heart failure. In the adjudication order, the court noted the issues of drug use in the home and the mother's alleged association with drug dealers. The goal of the case was reunification, and the Department's case plan was approved.

A review hearing was held in March 2008, and by the time of that hearing, Rita Adams–Fairrow had passed away. Appellant, father of R.D., appeared at the March 2008 hearing and sought custody of both juveniles. The court ordered that custody

---

1. R.D.'s half-sister, R.F., is also the subject of the April 21, 2009 termination order. Appellant is not the biological parent of R.F., and the termination of parental rights as to R.F.'s biological father, Hosea Blackmon, is not at issue in this case.

remain with the Department pending a paternity test and noted that appellant had a criminal record, including a domestic-battery conviction.

At a permanency-planning hearing on August 12, 2008, the court determined that the case goal was still reunification. The court found that appellant was not credible when he stated that he was not aware of the dependency-neglect case involving LaQualla Plair, to whom appellant was married, and her children. The court further found that appellant "did in fact know of same. In Ms. Plair's court case, she told the court that she was through with [appellant]. Now it is evident that she and [appellant] got back together right after that case was closed and are now married." The court noted appellant's personality disorder, forensic psychologist Dr. Paul Deyoub's concerns about appellant's inadequacies, and that appellant was virtually a stranger to R.D. Although reunification did not seem realistic, the court ordered that appellant be given more time in which to receive services due to the Department's failure to set up domestic-abuse classes for him. Appellant was ordered to obtain and maintain stable housing and employment, attend individual counseling, attend marital counseling with his wife, attend family therapy if recommended by the social worker, and follow recommendations from his psychological evaluation.

At a permanency-planning hearing on November 25, 2008, the court found that returning custody to the parent was contrary to the welfare of R.D. and that continuation of custody in the Department was in the best interest of and necessary for the protection of R.D.'s health and safety. The court determined that it was also in the best interest of R.D. that the goal of the case be termination and adoption. In so finding, the court reviewed the history of this case involving R.D., as well as the history of another related case involving appellant, appellant's wife LaQualla Plair, and Plair's children. Court orders from the Plair case were entered as exhibits in the case involving R.D. The court noted that appellant had no relationship with R.D. before this case began and that appellant had a personality disorder and a history of domestic battery. The court found that appellant had not complied with the case plan and orders of the court and set supervised visitation for one hour per week.

On January 2, 2009, the Department filed a petition to terminate appellant's parental rights, alleging that R.D. had been adjudicated dependent-neglected and had continued out of the custody of the parents for twelve consecutive months. Despite a meaningful effort by the Department to rehabilitate the parent and to correct the conditions that had caused removal, those conditions had not been remedied by the parent. The petition further alleged that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that return of R.D. to the custody of the parent was contrary to her health, safety, or welfare and that despite the offer of appropriate family services, the parent had manifested the incapacity or indifference to remedy the subsequent issues or factors or to rehabilitate the circumstances that prevented R.D.'s return to appellant.

At a hearing on the petition to terminate parental rights, social worker Nita Spann testified that she was R.D.'s therapist. She had conducted family therapy with appellant and R.D. She testified that she did not foresee reunification with appellant as a viable option for R.D. She stated that R.D. did not know her father, that appellant did not have any sort of relationship with R.D. until her mother died, and

that, based on the interaction between appellant and R.D. during therapy, appellant did not display the skills to parent R.D. She testified that appellant had told her that he did not have any relationship with any of his children and had left the children in the care of their drug-dependent mothers. Ms. Spann was concerned about the dependency-neglect case involving appellant's wife, LaQualla Plair, and Plair's children, because in that case appellant had placed Plair's children in danger during domestic disputes. She testified that R.D. needed someone with "very specialized parenting skills" based on the signs of mental illness she already displayed. On more than one occasion, R.D. expressed to her that she did not want to live with appellant. Ms. Spann testified that, although appellant did not miss any of the therapy sessions, in her opinion, appellant did not possess the skills necessary to parent R.D., and it was in R.D.'s best interest that appellant's rights be terminated.

Dr. Deyoub also testified at the termination hearing. He stated that he did not recommend that R.D. be placed with appellant and Ms. Plair because appellant and Plair had a significant history of domestic abuse (resulting in Plair suffering two broken arms and a fight resulting in a knife wound), which had previously led to removal of Plair's children from her custody. A no-contact order between appellant and Plair and her children was in place after the removal of Plair's children. Nevertheless, after the children were returned to her, appellant and Plair reunited, were married, and lived together. Dr. Deyoub testified that placing R.D. in that situation would be harmful to her. Appellant had not accepted responsibility for the domestic abuse and denied hitting Plair. Dr. Deyoub's evaluation revealed that appellant had borderline-personality disorder and was withdrawn and avoidant. Appellant had poor interpersonal skills, an erratic work history, a poor history of family stability and very little involvement in the lives of his three older children.

Romulus Henry, a social worker with HLH Consultants, testified that he worked with appellant and Plair in therapy beginning in December 2008. Both appellant and Plair told him that their relationship was "better." Both denied having any recent physical altercations or disputes, but Plair later admitted to attacking appellant with a knife. Appellant also later admitted to "pushing" Plair, but not hitting her. Henry testified that appellant was very angry at "the system," and felt that he had been mistreated by the system. Henry testified that "[t]he amount of treatment [appellant] would need to resolve his anger issues would be left up to [appellant] and how much he [felt] that he [had] to have." Henry stated that Plair would sit quietly during sessions and would only speak when asked a question. Henry testified that during a therapy session between appellant, Plair and Plair's three children, appellant and Plair did not show anger toward each other. Henry concluded that it was in R.D.'s best interest that appellant's parental rights be terminated.

Testimony by the Department's adoption specialist showed that R.D. was adoptable. Kametric Burley, the Department's social worker, testified that despite appellant's compliance with all the services offered to him, she still recommended termination based on appellant's psychological evaluation and the therapist's reports. She stated that, despite services, appellant was unable to provide the educational services and the social skills and parenting skills necessary to care for R.D. Burley also recognized Mr. Henry's testimony that appellant had not addressed the domestic-abuse issue in therapy, and thus, Henry could not say that appellant had

successfully completed domestic-abuse classes.

LaQualla Plair Dozier testified that she suffered from bipolar and paranoid-schizophrenic disorder. She stated that after the dependency-neglect case regarding her children had been closed in July 2007, she and appellant "decided to give it another try." They married on March 15, 2008, despite her previous testimony that she would "never be around [appellant] again." She claimed that there had not been any more incidents of domestic abuse involving appellant.

Appellant testified that he had benefited from the domestic-violence classes and other services offered to him. He had learned to control his attitude and his feelings. He stated that his home was appropriate for R.D. and that R.D. had a bedroom there. He testified that R.D.'s stepsiblings were happy for her to come live with them. Appellant testified that he was very "open" with Dr. Deyoub during Dr. Deyoub's evaluation.

After considering and reviewing all the evidence submitted and the testimony of the witnesses, the court found that it was contrary to the child's best interest, health and safety, and welfare to return the child to the parental care and custody of appellant and further found that the Department had proved by clear and convincing evidence that the child had been adjudicated dependent-neglected and had continued out of the custody of the parent for twelve months, and despite a meaningful effort by the Department to rehabilitate the parent and to correct the conditions that had caused removal, those conditions had not been remedied by the parent. Based on these findings the court granted the Department's petition and terminated appellant's parental rights to R.D. This appeal followed.

A heavy burden is placed on a party seeking to terminate the parental relationship, and the facts warranting termination must be proved by clear and convincing evidence. *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark.App. 193, 287 S.W.3d 633 (2008). The question this court must answer is whether the trial court clearly erred in finding that there was clear and convincing evidence of facts warranting the termination of parental rights. *Hall v. Ark. Dep't of Human Servs.*, 101 Ark.App. 417, 278 S.W.3d 609 (2008). Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Ratliff v. Ark. Dep't of Human Servs.*, 104 Ark. App. 355, 292 S.W.3d 870 (2009) (citing *Albright v. Ark. Dep't of Human Servs.*, 97 Ark.App. 277, 248 S.W.3d 498 (2007)). However, courts are not to enforce parental rights to the detriment or destruction of the health and well-being of a child. *Id.* Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A) (Repl.2008), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parents. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 285 S.W.3d 277 (2008). In addition, the proof must establish at least one of several statutory grounds set forth in Arkansas Code Annotated section 9–27–341(b)(3)(B).

Here, appellant contends that he has met all the requirements set forth in the case plan. He admits, however, that he needed more time to bond with the

child and to develop the skills and attributes necessary to parent a child. The intent of our termination statute is to provide permanency in a child's life in all instances in which the return of the child to the family home is contrary to the child's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark.Code Ann. § 9–27–341(a)(3) (Repl.2008). Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *See Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005); *Jones–Lee v. Ark. Dep't of Human Servs.*, 2009 Ark.App. 160, 316 S.W.3d 261.

■ Mere completion of the case plan does not defeat a petition to terminate parental rights. *See Wright v. Ark. Dep't of Human Servs.*, 83 Ark.App. 1, 115 S.W.3d 332 (2003). What matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for the child. *Id.* Appellant had no involvement in R.D.'s life until after her mother's death. Although appellant had completed most classes, the trial court found that appellant received minimal benefit from those services and that potential harm to R.D. existed if returned to appellant's custody due to appellant's history of domestic violence, his diagnosis of a personality disorder and borderline intellectual functioning, his wife's paranoid schizophrenia, and both Dr. Deyoub's and R.D.'s therapist's conclusion that appellant was not capable of parenting R.D. Under these facts, we cannot say the trial court erred in terminating appellant's parental rights.

Affirmed.

HENRY and BROWN, JJ., agree.