

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-567

| | |
|---|---|
| TAWANA WILLINGHAM<br>APPELLANT | **Opinion Delivered** October 22, 2014 |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. JV-13-702] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br>APPELLEES | HONORABLE VICKI SHAW COOK, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Tawana Willingham appeals from the termination of her parental rights to her five children, who range in age from four to eleven years old.[1] On appeal, Tawana argues that there was insufficient evidence to support the termination order. We affirm.

We review termination of parental rights cases de novo. *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2013); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633,

---

[1]The parental rights of the children's father, Christopher Lemmer, were also terminated, but he is not a party to this appeal.

839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

Prior to initiation of these termination proceedings, Tawana had a history with appellee Department of Human Services. A dependency-neglect case was opened on January 17, 2012, at which time the children were removed from Tawana's custody. The children remained in foster care until May 31, 2012, when they were returned to Tawana while she was living in a domestic-abuse shelter. Tawana left the shelter on June 7, 2012, leaving her children behind. Tawana was found to have abandoned her children, and the children returned to foster care where they remained until February 7, 2013. The children were then returned to Tawana, and that dependency-neglect case was closed on June 5, 2013.

The children were most recently removed on October 28, 2013, when DHS took an emergency hold of the children as a result of drug abuse and domestic violence in the home. In its petition for emergency custody and dependency-neglect, DHS alleged that there had been a report that Tawana and the children's father, Christopher Lemmer, were using illegal drugs in the presence of the children. It was also reported that Tawana and Christopher were having violent physical fights while the children were present. Upon investigation, the children disclosed that both parents were physically aggressive toward each other, and that

their father had thrown knives at Tawana. The children also disclosed that there was very little food in the home. The children's maternal grandparents were interviewed, and they said that they had seen physical fights between Christopher and Tawana in front of the children, and also that they had witnessed Christopher and Tawana intoxicated on drugs. Both parents were given drug screens, and both Christopher and Tawana tested positive for methamphetamine and THC. Tawana also tested positive for methadone and amphetamines. Based on these circumstances, the trial court entered an ex parte order for emergency DHS custody on November 4, 2013.

DHS filed a motion to terminate reunification services on December 16, 2013, and a hearing on the motion was held on January 22, 2014. On February 3, 2014, the trial court entered an order terminating reunification services, noting that the children had been removed from the home and placed in foster care for a third time. In that order, the trial court found:

> During the last dependent–neglect case that was open for seventeen months, the Department offered foster care, therapeutic foster care, visitation, medical/dental care, transportation, parenting classes, counseling, random drug/alcohol testing, psychological evaluations, anger management instruction, domestic violence education, and case management. There are no further or other services the Department can offer the parents to achieve successful and permanent reunification that have not already been offered. The parents have reverted to their old patterns of behavior by engaging in domestic violence again in front of the juveniles, both have tested positive for illegal substances, and the juveniles continue to suffer from environmental, educational, and medical neglect. Based on the history of the parents, it is highly unlikely that any services to the family will result in successful reunification. . . . Specifically, based on the facts as set forth above, the Court finds by clear and convincing evidence that there is little likelihood that services to the family will result in successful reunification and, as such, the parents have subjected the juveniles to aggravated circumstances.

SLIP OPINION

Also on February 3, 2014, the trial court entered an adjudication order finding by clear and convincing evidence that the parents had subjected the children to aggravated circumstances in that there was little likelihood that services to the family would result in successful reunification.

DHS filed a petition to terminate parental rights on February 5, 2014. The termination hearing was held on March 20, 2014.

On April 2, 2014, the trial court entered an order terminating Tawana's parental rights. The trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as required by Arkansas Code Annotated section 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2013). The trial court also found clear and convincing evidence of one statutory ground. Specifically, pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(3)(A)(i)* (Supp. 2013), the court found that a determination had been made by a judge that Tawana had subjected the children to aggravated circumstances, relying on its determination in the adjudication order in the present proceedings that there was little likelihood that services to the family would result in successful reunification.

Jamie Moran, a DHS supervisor assigned to the case, testified at the termination hearing. Ms. Moran testified that DHS had provided comprehensive services to Tawana in the previous dependency–neglect case and had worked hard with her to achieve reunification. However, that reunification lasted less than five months before the children again had to be

removed. Ms. Moran testified that DHS was recommending termination of parental rights based on the facts that the children had been in and out of foster care, there had been no stability, and their parents had maintained a volatile relationship and continued to use drugs and put themselves before the children.

Shirley Watkins, an adoption specialist, testified that all five children were adoptable. Ms. Watkins stated that the goal was to have all of the children adopted together, and that she had identified seven potential adoptive families.

Tawana testified that she is no longer in a relationship with Christopher after he kicked her out of his mother's house two months prior to the termination hearing. She stated that she has moved from Hot Springs to Cabot, where she lives in a three-bedroom home, and that she is now clean and sober. Tawana testified that she had tried to contact DHS since the removal of her children, but that DHS was uncooperative and would not return her calls. Tawana stated that she loved her children, and she thought that termination of her parental rights was not in their best interest.

In this appeal, Tawana challenges the sufficiency of the evidence supporting termination of her parental rights. Tawana primarily contends that termination was not in the best interest of her children, but she also briefly argues that the statutory requirements were not met. Tawana acknowledges that she had not been a perfect parent and had "done wrong by her children," but she maintains that she has removed herself from her abusive relationship with Christopher, and that DHS failed to present proof that she was presently unstable or that the children would be at risk of harm if returned to her custody. Tawana complains that in

the most recent dependency-neglect case she did not receive access to DHS services, and she submits that the outcome of this case would have been different had services been provided to her.

We initially note that there can be no challenge to the statutory grounds of aggravated circumstances because this finding was made by the trial court in its adjudication order, which was not appealed. In termination cases, a challenge to a finding of aggravated circumstances must be made, if at all, in an appeal from the adjudication order. *Hannah v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 502. DHS was relieved from providing reunification services based on this unappealed finding of aggravated circumstances, specifically that there was little likelihood that services to the family would result in successful reunification, in accordance with Arkansas Code Annotated section 9-27-365(c)(2)(A)(iv) (Supp. 2013).

Furthermore, we conclude that the trial court did not clearly err in its determination that termination of Tawana's parental rights was in the best interest of the children. We have held that a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849. In this case the children had been in and out of foster care for more than two years before Tawana's parental rights were terminated, and the most recent removal came after extensive DHS services had been provided to Tawana. This final removal, which came after substantiated reports of drug use and domestic violence, demonstrated that Tawana had failed to benefit from the DHS services and had relapsed into behavior that put her children at risk of harm. And while Tawana claimed that she no longer

maintained her violent relationship with Christopher, she admitted that they separated only recently after Christopher kicked her out of his mother's home. Finally, Tawana concedes in her brief that there was sufficient evidence presented that the children would find permanency through adoption. On this record, we hold that the trial court's finding that termination was in the children's best interest was not clearly erroneous, and we affirm the order terminating Tawana's parental rights.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Travis Ragland*, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee Arkansas Department of Human Services.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees K.W., J.L.1, J.L.2, K.L., and A.W.