2015 Ark. App. 374

**Chantel SIMMONS, Appellant,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

**No. CV–15–146**

Court of Appeals of Arkansas, DIVISION IV.

Opinion Delivered June 17, 2015

---

Brett D. Watson, Attorney at Law, PLLC, by: Brett D. Watson, for appellant.

Tabitha Baertels McNulty, Office of Policy & Legal Services, for appellee.

Chrestman Group, PLLC, by: Keith L. Chrestman, attorney ad litem for minor children.

ROBERT J. GLADWIN, Chief Judge

Chantel Simmons appeals the Craighead County Circuit Court's order of December 12, 2014, terminating her parental rights.[1] She argues that the circuit court erred in terminating her parental rights because appellee Arkansas Department of Human Services (DHS) failed to show clear and convincing evidence that terminating her parental rights was in her children's best interest. We affirm.

*Facts*

DHS filed a petition for emergency custody and dependency-neglect on April 8, 2013, alleging that appellant's children, K.H. (born 3/30/09) and P.H. (born 6/14/10) were dependent-neglected as a result of appellant's drug use in the home. Based on a hotline report, an agent of DHS went to appellant's home on April 5, 2013, and observed drug paraphernalia. Additionally, appellant tested positive for methamphetamine use. As a result, DHS placed a seventy-two-hour hold on the children. An ex parte order was signed on April 8, 2013, finding probable cause to believe that the children were dependent-neglected. The children were placed in DHS custody, and an attorney ad litem was appointed for them.

A probable-cause order was filed on April 16, 2013, finding that the emergency conditions causing removal continued and that the children should remain in DHS custody. Appellant was ordered to cooperate with DHS; comply with the case plan; obey all court orders; view "The Clock is Ticking" video; remain drug free; submit to random drug screens; participate in and complete parenting classes; obtain and maintain clean, safe, and stable housing; obtain and maintain stable employment; keep DHS informed of a current address; notify DHS of any changes in address or marital status; maintain weekly contact with the case worker; and provide DHS with a budget. Appellant

---

1. The petition for termination of parental rights names Matthew Hughes as the legal father of the children; however, the adjudication of his parental rights is not the subject of this appeal and will not be addressed.

was drug tested and found to be negative for all substances.

An adjudication order was filed on May 17, 2013, wherein the circuit court found the children to be dependent-neglected because of parental unfitness due to appellant's drug use. Appellant was ordered to pay $37 per week in child support to DHS, and the children remained in DHS custody. The goal of the case was reunification, and the circuit court approved the case plan. The concurrent plan was relative placement, permanency, and adoption. Along with the same orders for appellant as previously set forth, appellant was ordered to submit to an intake at an inpatient, drug-treatment rehabilitation center, and to |₃follow the recommendations. Appellant provided an address of 1220 Monroe, Jonesboro, AR, 72401.

A review order was filed on October 30, 2013, and appellant was ordered to enter an inpatient rehabilitation program and complete the recommended treatment. The order reflects that appellant had not cooperated with DHS; viewed the video; participated in parenting classes; submitted to random drug screens; obtained stable housing; obtained stable employment; kept DHS informed; prepared a budget; or submitted to an intake. The circuit court noted that she had been late for visits and occasionally did not show up for visitation. Appellant was again ordered to follow the previous court orders.

A placement review order was filed on December 3, 2013, and it reflects that the children were transferred from the custody of relatives, Cindy and Darrell Smith, to nonrelatives, Anthony and April Timms. A permanency-planning order was filed on April 7, 2014, wherein the circuit court found that returning the children to the parents' custody was contrary to their welfare. The goal of the case was set for adoption because "[t]he juveniles are not being cared for by a relative and termination of parental rights is in the best interest of the juveniles." The circuit court found that substantial, measurable progress had not been made by appellant and that appellant was not credible. Appellant was ordered to attend two Narcotics Anonymous (NA) meetings per week and provide proof of attendance.

DHS filed a petition for termination of parental rights on June 4, 2014, alleging that termination of parental rights was in the children's best interest, taking into consideration the likelihood that they would be adopted and the potential harm to their health and safety if |₄they were returned to their parents' custody. Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Supp. 2013). DHS also alleged that the children had been adjudicated dependent-neglected and had continued out of appellant's custody for more than twelve months and, despite meaningful efforts by DHS to rehabilitate appellant and correct the conditions that caused removal, those conditions had not been remedied by appellant. Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(*a*). DHS alleged specifically that appellant had not consistently submitted to random drug screens during the pendency of the case and had not remained drug free; that she did submit to a drug-and-alcohol assessment, but she did not successfully complete inpatient treatment; and that she was not attending the required NA meetings. Further, DHS claimed that appellant had not rectified her drug issues. DHS also alleged that other issues arose after the filing of the original petition that demonstrated return of the children to appellant's custody would be contrary to their health, safely, or welfare, and despite the offer of appropriate family services, appellant had manifested the incapacity or indifference to remedy the subsequent issues or factors. Ark. Code Ann. § 9–27–

341(b)(3)(B)(vii)(*a*). Specifically, DHS alleged that appellant did not cooperate with DHS in that she did not comply with the case plan and all court orders. She did not obtain and maintain clean, safe, and stable housing; she did not obtain and maintain stable employment; she did not keep DHS informed of current information; and she did not prepare and submit a budget indicating sufficient income.

At the termination-of-parental-rights hearing, appellant moved for a continuance on the grounds of judicial economy because the circuit court had granted the father's motion to continue his case. However, the circuit court denied appellant's motion for continuance, reasoning that the case had been on "separate tracks in terms of compliance" and noting that the matter had been pending "as long as it has."

Kimberly Jacobs, caseworker for Craighead County Division of Children and Family Services, testified that appellant waited six months to contact a rehabilitation center after she had been ordered to submit to an intake at an inpatient treatment rehabilitation center. She went in for treatment at a rehab center on December 16 but left on December 22. She was later assessed at Mid–South, and it was recommended that she go to Wilbur Mills for fourteen days and then complete three months of outpatient counseling. She completed the fourteen days and completed parenting classes while there. Jacobs stated that she did not have proof that appellant was attending NA meetings as ordered. She also said that the children were placed in DHS custody in April 2013, but appellant did not give them an address where she could be located until March 2014. At the time of the hearing, appellant had been at a new address for three months, but Jacobs had not been inside.

Jacobs said that appellant had moved three times in 2014.

Jacobs stated that the only times they were able to randomly drug test appellant was at her job in July and August 2014. She stated that she did not believe appellant had rectified the reason for removal of the children because she had continued to fail drug screens. On October 14, 2014, appellant tested positive for methamphetamine and amphetamines. On July 29, 2014, she tested positive for methamphetamine and marijuana. On July 25, 2014, she tested positive for methamphetamine and amphetamines. On June 18, 2014, she tested positive for methamphetamine and amphetamines, and on February 28, 2014, she tested positive for marijuana. However, Jacobs said that appellant denied having a drug problem throughout the case. Jacobs testified that she did not have any reason to believe that any of the testing that she had performed was faulty. She stated that she believed the hair-follicle test that was negative on January 27, 2014, was faulty.

Jacobs testified that appellant arrived late for visitation in the beginning of the case, but declined DHS's offer of transportation. However, Jacobs stated that appellant was always appropriate with the children during visits and had a good bond with them. Jacobs testified that appellant had a job at Steak Escape and a house with other people living with her. However, appellant had not paid child support as ordered. Jacobs said appellant had not discussed with DHS the people who were living with her with DHS. She testified that the children were adoptable and that several parties wanted to adopt them if termination were granted. She stated that she believed it would be in the children's best interest for appellant's parental rights to be terminated.

Michael Graham, a CASA advocate, testified that he had been in contact with appellant every two weeks and had been to her employment and her current home on two occasions. Graham said that appellant's fiancé lived with appellant and that the house was clean and appropriate. He also had observed visitations and said that appellant had a great bond with her children. He said that, despite appellant's growth, "there are issues there." He said he was not convinced that there was still not a drug issue. He also said that he had concerns about the appropriateness of people appellant associated with, indicating that [7]appellant's fiancé seemed nice, but was unconventional. He stated that, at first, appellant did not admit that she had a fiancé, which made him question her credibility, but that he did understand that she did not tell because she thought that this threatened her relationship with her children. Graham also stated that the foster parents were interested in adopting the children, along with "the grandmother and Ms. Nunez."

Appellant testified that her fiancé was Brock Norwood and that they had lived together since August 2014. She had not discussed her fiancé with Ms. Jacobs and did not know Ms. Jacobs's phone number. She acknowledged that she had admitted in court the last time that she used drugs one time. "I used one drag off of it," she said. She testified that she had been clean since December 16, 2013. She said that she did not know her fiancé had to be cleared for her to have unsupervised visits or that she was to tell DHS that he was living with her. She claimed that she had been attending NA meetings twice a week but forgot to bring proof and had never shown proof. She claimed that the trinkets on her key chain were earned for going to NA meetings. She said that she should get her children back because she had changed and had completed rehabilitation

and had followed the recommendations, had been to NA classes, completed outpatient treatment, and had a stable job and home. She said that she was never informed of where to pay child support.

At the close of evidence, appellant moved for a directed verdict, arguing that there was not substantial evidence that it would be in the best interest of the children for appellant's parental rights to be terminated. She argued that DHS failed to prove that there would be potential harm to the children by returning custody to her. She agreed that the [8]children had been adjudicated dependent-neglected and had been out of her custody for over twelve months. She argued that DHS failed to prove that she did not consistently submit to random drug screens. Further, she contended that DHS failed to prove that she had not remained drug free, that she did not complete the inpatient treatment, and that she was not attending the required NA meetings. She argued that she was attending the meetings and had proof by the tags on her key ring. She completed fourteen days in Wilbur Mills, which was in compliance with the court's order. She also completed the outpatient treatment. Finally, she argued that the hair-follicle tests were negative for drug use and that DHS's tests were positive. She claimed that this contradiction required that a directed verdict be granted.

The trial court denied the motion and granted DHS's petition to terminate parental rights. The trial court stated its opinion for the record, and a file-marked order terminating parental rights was filed December 12, 2014. On appeal, appellant argues that the circuit court erred in finding that DHS proved that terminating her parental rights was in her children's best interest. See Ark. Code Ann. § 9–27–341(b)(3)(A).

## Standard of Review

In *Rodgers v. Arkansas Department of Human Services,* 2015 Ark. App. 299, at 6, 2015 WL 2149220 (citing *Tillman v. Ark. Dep't of Human Servs.,* 2015 Ark. App. 119, at 6–7, 2015 WL 831629), this court set forth our standard of review for termination-of-parental-rights cases:

Termination-of-parental-rights cases are reviewed de novo. *Allen v. Ark. Dep't of Human Servs.,* 2011 Ark. App. 288, 384 S.W.3d 7. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Supp. 2013). The trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9–27–341(b)(3)(B). However, proof of only one statutory ground is sufficient to terminate parental rights. *Allen, supra.*

## Potential–Harm Analysis

Appellant contends that the trial court's potential-harm analysis was fraught with five clearly erroneous factual findings.[2] First, appellant contends that DHS admitted that appellant completed inpatient therapy. However, the trial court's order stated that appellant "did not successfully complete in-patient treatment." Second, appellant contends that DHS presented no evidence that she did not participate in random drug screens. The testimony was that Ms. Jacobs administered random drug screens only a few times, as she could only catch appellant at work. Ms. Jacobs did not testify that appellant refused the drug tests. Third, appellant claims that DHS presented no evidence that appellant did not participate in NA meetings. Ms. Jacobs testified that she had no proof as to whether appellant attended the meetings, and appellant testified that she had attended the meetings. Thus, appellant claims that DHS did not present clear and convincing evidence that appellant did not attend.

Fourth, appellant argues that she did have stable housing. She admits that her housing was not stable until December

**2.** Appellant does not challenge the statutory ground relied on by the circuit court or the best-interest adoptability finding.

2013, but that since then, each move was made to more stable housing. She contends that the circuit court erred by equating "stable" housing with "the same" housing. She cites *Strickland v. Arkansas Department of Human Services*, 103 Ark. App. 193, 287 S.W.3d 633 (2008), where this court rejected the circuit court's finding that housing was not stable because the appellant had moved several times, as DHS failed to present evidence that the residences were unsafe or inappropriate. Here, appellant contends that her moves show that she continuously strived to improve her situation. Fifth, appellant argues that DHS admitted that her employment was stable. Ms. Jacobs testified that appellant had been employed at Steak Escape for eight months at the time of the hearing. Thus, appellant maintains that the circuit court's finding that she did not have stable employment was clearly erroneous.

Appellant also argues that the circuit court's finding that she tested positive for drugs is not enough, by itself, to establish the potential harm required to forever terminate a parent's rights. She contends that, in the context of a parent with ongoing substance concerns, the courts require more than positive tests before finding potential harm. *Willingham v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 568, 2014 WL 5382622 (drugs plus abusive relationship); *Frisby v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 566, 2014 WL 5382345 (drugs plus five-year incarceration); *Compton v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 501, 2014 WL 4748235 (drugs plus domestic violence and other criminal behavior); *Eldredge v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 385, 2014 WL 2807960 (drugs plus repeated incarcerations and instability). Appellant argues that the testimony that appellant tested positive on several occasions is not combined with anything else to create potential harm to the children.[3]

■ DHS contends that the circuit court correctly terminated appellant's parental rights. We agree. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The focus is on the potential harm to the health and safety of a child that might result from continued contact with the parent. *Id.* In *Tillman*, 2015 Ark. App. 119, at 4, 2015 WL 831629, this court stated that the mother's "continued use of drugs showed potential harm to the children."

■ In addressing each of the five findings contested by appellant, we hold that none are convincing. First, the circuit court found that appellant did not successfully complete inpatient treatment. Even though there was testimony from the caseworker that appellant attended the fourteen-day inpatient drug program and participated in an outpatient drug program, the evidence established that she continued to test positive for drug use on multiple occasions following that treatment. Second, the circuit court found at the review and permanency-planning hearings that appellant failed to submit to random drug screens.

■ Third, appellant had the duty to provide proof that she attended NA meetings, as she was ordered to do so. Thus, when she did not provide proof of attendance, the circuit court's finding that appel-

---

3. Appellant also complains that the circuit court erred in its order, listing Patricia Herring as the caseworker. We acknowledge this error and note that Kimberly Jacobs was the caseworker who testified at the termination hearing, and that the circuit court's order contains a typographical error, listing Patricia Herring as the caseworker.

lant failed to attend NA meetings was supported by the evidence. Credibility determinations are for the trier of fact, *Allen, supra,* and the circuit court did not believe that she forgot to bring her meeting sheets or that the key-chain trinkets were proof of attendance.

Fourth, DHS contends that appellant misstates the circuit court's finding regarding housing. We agree. The circuit court found that she did not obtain and maintain clean, safe, and stable housing until the permanency-planning hearing. Thus, the court's language demonstrated that the issue for the court was not with the actual home that she was living in at the time of the hearing; the issue was more that any progress on this issue came more than a year into the case and after the permanency-planning hearing.

Fifth, regarding appellant's stable-employment argument, the circuit court acknowledged that she had been employed since March 2013 in its oral ruling. Further, the circuit court found at the permanency-planning hearing that she had failed to maintain stable employment as she had been employed only one month prior to that hearing. Thus, the circuit court's finding that she did not maintain stable employment was supported by the evidence.

Affirmed.

Virden and Brown, JJ., agree.