
# ARKANSAS COURT OF APPEALS

DIVISION III
№ CV-14-491

| | |
|---|---|
| MICHELLE KNERR<br>APPELLANT | **Opinion Delivered** October 8, 2014 |
| V. | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. JV-2013-169] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD<br>APPELLEES | HONORABLE BARBARA ELMORE, JUDGE |
| | AFFIRMED; MOTION TO BE RELIEVED AS COUNSEL GRANTED |

## WAYMOND M. BROWN, Judge

Appellant appeals from a circuit court order terminating her parental rights to M.K.[1] Appellant's counsel has filed a motion to be relieved as counsel and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*,[2] and Arkansas Supreme Court Rule 6-9(i),[3] stating that there are no meritorious grounds to support an appeal. Appellant has not filed pro se points. In addition to explaining why the termination decision is not a meritorious ground for reversal, appellant's counsel listed six additional adverse rulings, as required by Arkansas Supreme Court Rule 6-9(i)(1)(B). Our review of the record reveals that appellant's counsel failed to address two additional adverse rulings;

---

[1]The court also terminated the parental rights of the putative father of M.K., Cliff Knerr, in the same order; he does not appeal.

[2]359 Ark. 131, 194 S.W.3d 739 (2003).

[3](2014).

however, for reasons discussed below, we affirm and grant counsel's motion to be relieved.

Heather Barnes received permanent custody of M.K. on August 2, 2011.[4] Appellant's parental rights were not terminated. Barnes returned M.K. to DHS's custody on May 30, 2013, asserting that she could no longer take care of M.K.[5]

Upon M.K.'s return to custody, DHS was unable to contact appellant. Accordingly, M.K. had no visitation with appellant during this case. On August 23, 2013, DHS filed its petition to terminate appellant's rights on the grounds that appellant had abandoned M.K.[6] and had subjected M.K. to aggravated circumstances due to abandonment.[7]

Bridgette Rappold, caseworker, testified at the January 21, 2014 termination hearing. Her testimony revealed that, despite M.K.'s having been back in DHS's custody since May 2013, appellant did not contact DHS until October 28, 2013. Even then, appellant did not inquire on M.K.'s well-being, only on how to recoup money she had

---

[4]M.K. initially came into care in February 2011. Appellant had left M.K. with Barnes in October 2010 and never came back for her. Barnes called DHS when M.K. needed medical care that Barnes could not provide under the circumstances.

[5]Barnes returned M.K. to DHS's custody due to an assessment from Pinnacle Point that M.K. should not be around other children; an assessment at Centers for Youth and Families disagreed. DHS did not seek a dependency-neglect finding against Barnes.

[6]Ark. Code Ann. § 9-27-341(b)(3)(B)(iv) (Repl. 2009).

[7]Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(A) & (B)(i).



sent to Barnes after M.K. had been returned to foster care.[8] It was not until appellant attended a January 10, 2014 staffing that appellant asked about M.K.[9]

At the time of the termination of parental rights hearing, appellant had not visited with M.K. since custody was awarded to Barnes in 2011. Furthermore, appellant had not provided any documentation showing that she had obtained a psychological evaluation, that her name was on the lease to the home she lived in with a roommate,[10] or that she had provided any financial assistance to Barnes while M.K. was in Barnes's custody. Appellant also had not begun parenting classes and had not provided a viable relative placement for M.K.[11]

Appellant also testified at the termination hearing. She said she called M.K. once per week. She also stated that she asked to visit M.K. at least once per month and that "almost every time" she asked, Barnes would not allow her to visit M.K. She stated that Barnes said no because "the court wouldn't allow it" and acknowledged that Barnes "was trying to protect M.K."

---

[8]There was a great deal of testimony about $47.50 appellant sent to Barnes for medication for M.K. after M.K. had been returned to DHS's custody. Being of no substantial significance because the amount was minimal in terms of financial support of a minor, this court chooses not to discuss this in detail.

[9]Appellant was present at a previous hearing that was continued and was provided the information for a staffing on that date. She attended by phone.

[10]Appellant was living in Texas with her child, a roommate, and the roommate's child.

[11]Appellant submitted the names of Heidi Gaudino, sister of Heather Barnes, and Rebecca Gable, her roommate; however, Gaudino was not a viable placement because she had recently had knee surgery, and Gable was not a viable placement because she did not have custody of two of her own children.

SLIP OPINION

Appellant testified that she gave Barnes a total of $447.50 between 2011 and 2013 for "whatever M.K. needed."[12] She never paid child support. She believed she currently had the means to take care of M.K. because she was getting $240 in cash assistance from the state, $340 in food stamps, "about $50 per week" from Mary Kay sales "if [she] really work[ed] at it," and would begin a job the following day that would pay "$8 an hour for seven hours a week."[13] During the course of the case, appellant had not held a job for an extended period of time.[14]

As for her living situation, appellant failed to bring a copy of the lease to prove that her name was on it because she "totally forgot about it." She stated that she lived with her son, a roommate, and the roommate's daughter.[15] She didn't advise on what she would do if her roommate asked her to leave because, she stated, "[her roommate] wouldn't do that." However, she did advise that her "financial well-being right [then was] in no small part dependent on [her and her roommate's] ability to live together because [her roommate was] paying the bulk of the rent." In the time since M.K. was removed from

---

[12]Appellant testified to giving Barnes $200 in 2010, $200 in 2011, and $47.50 on June 6, 2013. Appellant only submitted proof for the $47.50. Barnes disputed the amount she received from appellant.

[13]Appellant testified that there was a prospect of more hours.

[14]Appellant testified that she worked as a housekeeper from January 1, 2013, to February 15, 2013; as a seasonal worker from December 15, 2013, to December 24, 2013; and as a beauty consultant from May 2013, which she was still doing at the time of the termination hearing.

[15]In addition to M.K., appellant also has a son who is in his father's custody, a daughter who is in appellant's sister's custody, and a son, younger than M.K., who is in appellant's custody.

appellant's custody, appellant had lived in Mississippi, Illinois, and three different addresses in Texas.

Appellant testified that "if Heidi had been able to take care of M.K., [she] would've preferred that over [appellant] having M.K." at that point because appellant was "not completely ready for M.K. to come back to [her]." Appellant acknowledged both that there wasn't any reason why she would not want M.K. to stay where she was if it were shown that she was doing well and thriving and that M.K. had been waiting long enough; however, she noted that she would want supervised visitation on a regular basis. She stated that "[p]robably within two months[,] [she was] going to be on [her] feet and be able to provide for [M.K.]." She later qualified that she would need "at least two more months." She stated that she wanted to be reunited with M.K.

Heather Barnes testified that from the time she received custody of M.K., she received phone calls from appellant "maybe once or twice a month, if that." She stated that appellant spoke to M.K. "maybe once or twice in the time [Barnes] had [M.K.]" because Barnes gave M.K. a choice on whether she wanted to speak to appellant and "generally M.K. said she didn't want to talk to [appellant]."[16] Barnes denied that appellant requested visitation with M.K. monthly. She advised that appellant asked for visitation with M.K. over spring break—which she asserts was the only time she denied visitation— and one other time during the short visit when appellant was on her way to Illinois.

M.K.'s foster mom, Nicole Bolton, testified that in the almost four months that she had had M.K., things were "going good" and that they were "[g]etting better every day."

---

[16]Barnes also noted that appellant and M.K. didn't speak, in part, because appellant would call after M.K. was already in bed for the night.



She stated that there were no issues at home with M.K. "beyond normal seven-year-old girl stuff." She testified that she and her husband were "absolutely interested in adopting M.K."

Fred Emery, appellant's fiancé, testified that he and appellant had known each other for "just over a year." He testified that he lived with appellant for "like three or four months" prior to her coming to court in November 2013, but that he now lived in Alabama. He advised that appellant began the trip to Alabama to move with him, but stayed in Mississippi for "two or three months" upon learning that he hadn't obtained a place for them to stay. He admitted that at the time of the hearing, he "[could not] offer a suitable home for [Michelle] or the kids" because he was "still working on that." He testified that he was the person who obtained and sent the money in June 2013. He denied being in the same financial position as appellant and opined that appellant could give M.K. a stable home "at [that] moment."

Rebecca Gable, appellant's roommate, testified that appellant had lived with her in a four-bedroom, two-bathroom mobile home. She advised that everyone had their own room; that M.K. would share a room with her daughter, if returned; and that she was planning on "bringing her twins back home with her" if she got "even more stable."[17] She testified that her name was on the lease of the mobile home and that appellant was listed as an occupant.

At the close of evidence, the court found that DHS proved abandonment by appellant pursuant to Arkansas Code Annotated section 9-27-347(b)(3)(B)(iv) and found

---

[17]Gable's twin boys were in their paternal grandparents' custody. Gable voluntarily "signed [her] rights" to the boys to the grandparents.

clear and convincing evidence that it was in M.K.'s best interest to terminate appellant's rights. An order reflecting the same was entered on March 5, 2014. Appellant timely appeals from this order.

Generally speaking, if a no-merit brief in a termination of parental-of-parental-rights case fails to address all the adverse rulings, we will send it back for rebriefing.[18] However, where the adverse rulings are clearly not meritorious, we decline to order rebriefing.[19]

The first adverse ruling not addressed by appellant's counsel involved an objection by appellant's counsel below to a question regarding when appellant received a copy of court documents pertaining to the award of permanent custody of M.K. to Barnes. Counsel objected on grounds of relevance. The attorney ad litem argued that the answer would be relevant because appellant stated that she didn't visit M.K. because the court wouldn't allow her to. The court allowed the question. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[20] In this case, the question was relevant because it went to the issue of abandonment in that it showed when appellant knew whether she was allowed to visit M.K. This is relevant because appellant testified that she did not visit with M.K. because

---

[18]*Sartin v. State*, 2010 Ark. 16, at 4, 362 S.W.3d 877, 880 (citing *Brady v. State*, 346 Ark. 298, 57 S.W.3d 691 (2001); *Mitchell v. State*, 327 Ark. 285, 938 S.W.2d 814 (1997)).

[19]*Id.*, 2010 Ark. 16, at 5, 362 S.W.3d at 880 (citing *Linker-Flores v. Ark. Dep't of Human Servs.*, 364 Ark. 224, 217 S.W.3d 107 (2005)).

[20]Ark. R. Evid. 401.

appellant had to rely on Barnes's understanding of the custody arrangement because she did not have it. This provides no meritorious ground for reversal.

The second adverse ruling not addressed by appellant's counsel involved an objection by appellant's counsel to a question posed to Emery regarding Emery's knowledge of monetary support that appellant provided for M.K. Counsel objected on grounds that the question assumed facts that were not in evidence. DHS argued that it was asking for Emery's personal knowledge. The court permitted the question to be asked. Emery's testimony was not contrary to or assumptive of any facts in not evidence because Emory testified only to his personal knowledge of what support appellant had sent to M.K. This provides no meritorious ground for reversal.

In compliance with *Linker-Flores* and Rule 6-9(i), counsel ordered the entire record and found that after a conscientious review of the record there are no issues of arguable merit for appeal. Counsel's brief adequately covered every other action that was adverse to appellant below that was not specifically discussed above. After carefully examining the record and the brief presented to us, we believe counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and conclude that the appeal is wholly without merit.

Affirmed; motion to be relieved as counsel granted.

GLADWIN, C.J., and WOOD, J., agree.

*Suzanne Ritter Lumpkin*, for appellant.

No response.

8