Cite as 2026 Ark. App. 168

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-25-472

|  |  |
|---|---|
| ASHLEY MASK AND WYATT CONNER<br><br>APPELLANTS | **Opinion Delivered** March 11, 2026<br><br>APPEAL FROM THE SHARP COUNTY CIRCUIT COURT [NO. 68JV-23-72] |
| V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | HONORABLE ADAM G. WEEKS, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BRANDON J. HARRISON, Judge

The Sharp County Circuit Court terminated the parental rights of Ashley Mask and Wyatt Conner[1] to their daughter (MC, born 09/27/20). Mask has appealed and argues that the circuit court erred in finding that she had not remedied the conditions that caused removal and erred in finding that termination was in MC's best interest. Counsel for Conner has filed a motion to withdraw and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2025), asserting that there are no issues of arguable merit to support an appeal. The clerk of this court made multiple attempts to send copies of counsel's motion and brief to Conner, including at the address provided by Conner to

---

[1]Conner and Mask were married when MC was born.

the clerk's office, informing him of his right to file pro se points for reversal. The packet was returned to the clerk's office with the message "Return to sender/not deliverable as addressed/unable to forward." We affirm the termination of parental rights as to both parents and grant the motion to withdraw.

On 30 October 2023, the Arkansas Department of Human Services (DHS) petitioned for emergency custody of MC. The accompanying affidavit explained that DHS's history with this family began in 2008 with reports of substance abuse and environmental neglect. The affidavit also noted that MC has five siblings who have been removed from Mask's and Conner's custody and adopted by other families.

The circumstances leading to MC's removal began on October 26, when DHS received a report of neglect and failure to provide necessary food, clothing, and shelter to MC. The report alleged that MC was living with Conner in a camper with no electricity or water and that Conner uses drugs in the home. The report also alleged that Conner often leaves MC with an unknown male neighbor.

On Friday, October 27, DHS caseworker Ted Ford requested that officers from the Sharp County Sheriff's Office accompany him to Conner's residence to investigate. Conner was on probation for terroristic threatening toward a judge and DHS staff, and he also had outstanding warrants. Officers met Conner at the front door of the camper and informed him that he would be taken into custody for the outstanding warrants. Conner told DHS that MC lived with her mother, not with him, but he was unable to reach Mask on the phone. DHS exercised custody of MC and provided her with food and a medical exam, which revealed a urinary tract infection. Mask contacted DHS and was told that DHS

2

would keep MC over the weekend. The circuit court granted DHS emergency custody on October 30 after Mask tested positive for methamphetamine.

The court found probable cause to continue custody with DHS on November 1 and found that the family would benefit from participating in the family-centered treatment program. On December 5, the court adjudicated MC dependent-neglected on the basis of parental unfitness due to drug use. The court set the goal of the case as reunification and authorized DHS to arrange appropriate visitation. The court ordered the parents to complete a myriad of tasks, including cooperate with DHS, comply with the case plan, and obey the orders of the court; view the video *The Clock is Ticking*; remain drug free and submit to random drug screens; notify DHS of any change of address or marital status; if requested by DHS, submit to a drug-and-alcohol assessment and follow the recommendations thereof; participate in and complete parenting classes; obtain and maintain clean, safe, and stable housing with utilities turned on; obtain and maintain stable employment or sufficient income to support the family; and resolve all criminal issues.

The court reviewed the case on 16 April 2024 and found that Mask was partially compliant with the case plan. She was living with her boyfriend and his family, participating in family-centered treatment court, and receiving drug and mental-health counseling. However, the court noted that she had missed some visits with the child and was not present for the review hearing. The court found that Conner was compliant; he had completed a thirty-day inpatient drug treatment, secured stable income from a trust, submitted to drug screens, and attended parenting classes. Finally, the court found that the parents have a toxic

3

relationship. The court reviewed the case again in July 2024 and found that both parents were partially compliant with the case plan.

The court convened a permanency-planning hearing on 22 October 2024 and changed the goal of the case to termination of parental rights. The court found the parents unfit, citing Conner's refusal to maintain regular contact with MC, the parents' unstable housing and employment situations, and the parents' continued use of illegal substances. The court found that Mask had been participating in counseling but had missed several sessions and "has yet to demonstrate any progress toward remedying the reasons for the juvenile's removal." Mask had also refused to submit to drug screens, and a hair-follicle test in May 2024 was positive for methamphetamine. As to Conner, the court found that he consistently missed family-time visits; did not complete parenting classes; and refused to submit to drug screens, although he admitted he had relapsed several times.

On 4 November 2024, DHS petitioned for termination of parental rights for both parents citing grounds of failure to remedy (both parents), failure to maintain meaningful contact (Conner), parental rights involuntarily terminated as to a child (Mask), aggravated circumstances—little likelihood of reunification (both parents), and subsequent factors (both parents). *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*), (ii)(*a*), (vii)(*a*), (ix)*(a)(3)*, and (ix)(*a*)(*4*) (Supp. 2023). In February 2025, DHS amended the termination petition to assert that both Mask and Conner had their parental rights involuntarily terminated as to a child.

The court convened the termination hearing on 29 April 2025. Emily Rock, the primary caseworker, testified that Conner had completed inpatient treatment but did not pursue follow-up treatment and had relapsed. He had also started two parenting programs

4

but did not complete either of them. Conner receives $1300 a month from a structured settlement but does not have stable housing or employment. He had not contacted DHS or attended any visitation since January 2025. Rock said, "All the same things are still present now that were present at removal."

Rock testified that Mask had completed parenting classes and had gotten a job approximately one month ago. Rock was unaware if Mask had addressed her drug use because she refused to submit to drug screens. She had also refused to submit to another hair-follicle test. DHS had not seen inside the house where Mask was staying because "they won't allow us at that house. They don't want us there." But from the outside, it did not look appropriate for a four-year-old. Mask had exercised her four hours of weekly supervised visitation but had not progressed to unsupervised visitation.

Rock did not think that further services or additional time would result in successful reunification. Rock also said that MC is adoptable and happy in her current placement. On cross-examination, Rock said Mask had never expressed a desire to attend inpatient drug treatment.

Berkley Chafin, a program assistant with DHS, testified that she supervised visits for both parents and helped with transportation. She said that with both parents, visitation was more like hanging out with a friend, and there was not much parenting.

Mask testified that she would go to inpatient drug treatment but that it had never been offered to her. She said she would "do anything the department asks" to prevent her rights from being terminated. When asked why DHS could not enter the house where she lived, she said, "It's not me." She said that the house is not dirty and that MC could live

there. She expressed willingness to take a drug test. Mask admitted it had taken her "a little longer to do it," but she was trying, and she said that it would not be in MC's best interest to lose her altogether.

On cross-examination, Mask was asked why she had not taken another hair-follicle test, and she said, "Well, I got the paperwork, um, well, I didn't get the paperwork. She sent me the text message on where I needed to go and, well, I don't like to drive especially long places, you know, I, my anxiety gets the best of me sometimes." She explained her dismissal from family-centered treatment court by citing "trust issues" and "bad service" for the Zoom calls.

Connor testified that he had gone to rehab and then to "transition" for about a month. He claimed to be sober for seven months but that he relapsed approximately eleven months ago after he was told his camper was not appropriate housing. He said he had "never really done the home thing" and was currently "not really living anywhere right now." He agreed that his living situation was not suitable for MC but also agreed that it was in her best interest to be with him. His plan was to stay with "an ex-police officer in Horseshoe Bend" to get clean. He wanted to have more time to obtain housing and show the court he is sober.

On cross-examination, he said he had not been attending visitation because he had been falsely accused of threatening a DHS employee and was afraid to be charged with threatening again. But he claimed to be willing to work with DHS moving forward.

David Kerley testified that he had known Conner for about two years and that Conner and MC "were always great together." Kerley put Conner in touch with the ex-police officer and agreed to provide Conner with transportation.

The court ruled from the bench that it was granting DHS's petition. The court's written order found that DHS had proved by clear and convincing evidence the statutory grounds of failure to remedy, aggravated circumstances—little likelihood of reunification, and involuntary termination of parental rights to a child for both parents; and the subsequent-factors ground for Conner. The court also found that MC is adoptable and that she would face potential harm if returned to either parent due to the parents' continued drug use and inadequate shelter. Both parents timely appealed.

In order to terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B). *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007).

On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Posey*, *supra*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Only one ground is necessary to terminate parental rights. *Id.*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that lists all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). Additionally, the petition's statement of the case and facts are required to contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, *supra*.

## I. *Mask's Appeal*

Mask asserts that the circuit court erred in finding that she failed to remedy the situation that brought MC into DHS custody. She argues that she complied with the orders of the court and had completed parenting classes, obtained employment, and visited MC weekly. Regarding her drug use, she contends that she was willing to go to inpatient rehab, but it had not been offered to her.

As noted above, only one ground is necessary to terminate parental rights. *Lee, supra.* Mask challenges the failure-to-remedy ground but has failed to contest statutory grounds of aggravated circumstances (little likelihood of reunification) and involuntary termination of parental rights to a child. When an appellant fails to attack the circuit court's independent, alternative bases for its ruling, we will not reverse. *Casarreal v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 622.

Regarding best interest, Mask does not challenge the circuit court's findings on adoptability or potential harm. Instead, Mask asserts that there was no proof that "to sever the bond between the mother and the child" was in MC's best interest. She argues that the DHS witnesses testified to "compliance issues" but did not address or even say the words "best interest." However, the circuit court is not required to make a finding on the bond between mother and child, and even if such a bond existed, it is insufficient to warrant reversal in light of the record before us. *See, e.g., Lemon v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 253 (holding that existence of a bond between biological parent and child may not be sufficient to prevent termination of parental rights when weighed against other facts). Also, while Rock and Chafin may not have said the words "best interest," their entire

9

testimony demonstrated the potential harm MC would face if returned to either parent's custody, and, conversely, that not returning to either parent's custody was in MC's best interest.

Having reviewed the record and the briefs presented by the parties, we hold that the circuit court had sufficient evidence on which to find that it was in MC's best interest for Mask's parental rights to be terminated and that statutory grounds for termination existed. Thus, we affirm the termination of Mask's parental rights.

## II. *Conner's Appeal*

Counsel asserts that any challenge to the circuit court's determination that statutory grounds existed under Ark. Code. Ann. § 9-27-341(b)(3)(B) for termination of Conner's parental rights would be frivolous. Only one ground is necessary for termination to occur, *Lee*, *supra*, and counsel argues that the strongest ground relied on by the circuit court for termination was the prior-involuntary-termination ground. Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(*a*)(*4*) permits termination of parental rights when a "court of competent jurisdiction, including the juvenile division of the circuit court" finds that the parent had his "parental rights involuntarily terminated as to a child." Here, it is undisputed that Conner met the definition of a parent and that DHS introduced certified copies of two orders terminating Conner's parental rights to four children in previous dependency-neglect cases. Thus, counsel argues, DHS clearly and convincingly proved that Conner had his parental rights involuntarily terminated to a child.

Counsel contends that it would also be frivolous to seek reversal on the circuit court's best-interest finding. Rock testified that MC is adoptable with no barriers to adoption, and

this court has held that a caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *See Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, 543 S.W.3d 540. Regarding potential harm, the circuit court found that MC would be at risk of potential harm if returned to Conner's custody specifically due to her parents' "continued drug use and inadequate shelter," and the testimony supports this finding. Conner stated that he was "not really living anywhere right now" and that the situation was not appropriate for MC. He admittedly did not complete parenting classes, did not attend most visitations, and was not sober. Counsel contends that Conner's continued instability demonstrated potential harm to MC, and no meritorious argument for reversal on best interest can be made on appeal.

As required by Ark. Sup. Ct. R. 6–9(i)(1)(A), counsel has also reviewed the record for all rulings adverse to Conner made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose. In addition to the termination order itself, which counsel addressed above, Conner moved for dismissal at the close of DHS's case, and the court denied the motion. Conner renewed his motion to dismiss at the conclusion of the hearing and it was again denied by the court. Counsel explains that in deciding the motions to dismiss, the circuit court must consider if "the plaintiff's evidence, given its strongest probative force, presents a prima facie case." *Williamson v. Williamson*, 2018 Ark. App. 236, at 12, 548 S.W.3d 816, 825. Counsel contends that given the high hurdle that must be overcome in order for a circuit court to grant a motion to dismiss, it was not reversible error for the court to find that DHS put forth testimony and evidence sufficient to support the denial of Conner's motions to dismiss.

11

Counsel also discusses the denial of Conner's request for additional time to comply with the court's orders so that MC could be returned to him. Counsel asserts that it was not reversible error for the court to deny the request considering the arguments stated above. DHS had proved that termination was in MC's best interest and that at least one statutory ground for termination existed. Counsel explains that the intent of the termination statute is to provide permanency in a child's life in all instances where the child cannot return to the family home, and it appears from the evidence that a return cannot be accomplished within a reasonable period of time as viewed from the child's perspective. *See* Ark. Code Ann. § 9-27-341(a)(3). In addition, a circuit court is permitted to consider a parent's past behavior over a meaningful period of time as a good indicator of what the future may present. *Thompson v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 167, 374 S.W.3d 143. Counsel concludes,

> Sadly, due to Wyatt's failure to make progress and the entirety of the evidence presented at the termination hearing, it was unclear when he would be capable of safely parenting MC. Thus, despite Wyatt's love for MC, no meritorious argument can be made to support a reversal of the trial court's decision to terminate his parental rights and that such a decision was in the best interests of MC.

There is one adverse ruling that counsel has not addressed: Conner's request for a final visit with MC. After the court announced it was terminating Conner's parental rights, his counsel asked that "if he doesn't have a four-hour visit, we would at least ask, he would [be] given a short period of time to just to have a final visit with [MC] because we think it's in her best interest to do so." The court did not award Conner a final visit.

Generally speaking, if a no-merit brief in a termination-of-parental-rights case fails to address all the adverse rulings, we will order rebriefing. *Knerr v. Ark. Dep't of Hum. Servs.*,

2014 Ark. App. 550. However, where the adverse rulings are clearly not meritorious, we decline to order rebriefing. *Id*. Such is the case here.

In *Best v. Arkansas Department of Human Services*, 2020 Ark. App. 485, 611 S.W.3d 690, we stated that any decision to grant a final visit in a termination hearing is within the circuit court's discretion and that our courts have a duty to protect the best interest of the children. Here, the circuit court committed no abuse of discretion in denying a final visit because Conner had not seen MC in at least four months, and the circuit court was acting in MC's best interest in denying the visit. We conclude that any challenge to this adverse ruling would clearly be without merit.

Having reviewed the record and the brief presented by counsel, we hold that the circuit court had sufficient evidence on which to find that it was in MC's best interest for Conner's rights to be terminated and that statutory grounds for termination existed. Thus, we grant counsel's motion to withdraw and affirm the termination of parental rights.

Affirmed; motion to withdraw granted.

VIRDEN and BARRETT, JJ., agree.

*Terry Goodwin Jones*, for separate appellant Ashley Mask.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for separate appellant Wyatt Conner.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain* and *Linda J. Hamilton*, attorneys ad litem for minor child.